Scott J. Bornstein (*pro hac vice forthcoming*)
scott.bornstein@gtlaw.com
Joshua L. Raskin (*pro hac vice forthcoming*)
joshua.raskin@gtlaw.com
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: 212.801.9200
Facsimile: 212.801.6400

Nicholas A. Brown (SBN 198210)
nicholas.brown@gtlaw.com
GREENBERG TRAURIG, LLP
4 Embarcadero Center, Suite 3000
San Francisco, CA 94111-5983
Telephone: 415.655.1271
Facsimile: 415.520.5609

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES SCHWAB & CO., INC.; CHARLES SCHWAB BANK, SSB; and THE CHARLES SCHWAB CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>BLAZE MOBILE, INC.; BLAZE MOBILE TECHNOLOGIES, LLC; and MICHELLE FISHER<br><br>Defendants. | Case No. 25-2122<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Charles Schwab & Co., Inc., Charles Schwab Bank, SSB, and The Charles Schwab Corporation (collectively, "Schwab") bring this complaint for declaratory judgment of non-infringement against Blaze Mobile, Inc., Blaze Mobile Technologies, LLC, and Michelle Fisher (collectively, "Defendants") and allege as follows:

## I. Nature Of The Action

1. This is an action for a declaratory judgment arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. §§ 1 et seq. Schwab requests a judicial declaration that U.S. Patent Nos. 10,235,664 ("'664 patent"), 11,783,365 ("'365 patent"), and 11,847,649 ("'649 patent") (collectively, the "Patents-in-Suit") are not infringed by Schwab.

2. True and correct copies of the Patents-in-Suit are attached as Exhibits A-C.

## II. The Plaintiffs

3. Plaintiff Charles Schwab & Co., Inc. is a corporation organized in the state of California, with a major place of business in San Francisco, California. Charles Schwab & Co., Inc. is a wholly owned subsidiary of Schwab Holdings Inc., which is a wholly owned subsidiary of The Charles Schwab Corporation.

4. Plaintiff Charles Schwab Bank, SSB, is a Texas state savings bank headquartered in Texas. Charles Schwab Bank, SSB, is a wholly owned subsidiary of The Charles Schwab Corporation.

5. Plaintiff The Charles Schwab Corporation is a corporation organized under the laws of Delaware, with its principal place of business in Westlake, Texas.

## III. The Defendants

6. Defendant Blaze Mobile, Inc. ("Blaze Mobile Inc.") is a privately held corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 2930 Domingo Avenue, Suite 123, Berkeley, CA 94705.

7. On information and belief, Blaze Mobile Inc. controls and operates the website blazemobile.com, and has done so since 2007. An image of part of the blazemobile.com website as it appears in 2025 is attached as Exhibit D.

8. A true and correct copy of a PDF printout of a page from the blazemobile.com website (blazemobile.com/patents.asp) as it appears in 2025 is attached as Exhibit E. That page (blazemobile.com/patents.asp) is available through a link on blazemobile.com and contains a link to each of the Patents-in-Suit.

9. Defendant Blaze Mobile Technologies, LLC ("Blaze Mobile Technologies") is a Texas limited liability company that has registered its place of business as being 5465 Legacy Drive, Ste 650, Plano, TX 75024.

10. On information and belief, Blaze Mobile Technologies is a subsidiary of Blaze Mobile Inc.

11. On information and belief, Blaze Mobile Technologies was incorporated on January 4, 2024.

12. Blaze Mobile Technologies' Certificate of Formation states that it "will not have managers" but that, instead, "[m]anagement of the company is reserved to . . . the governing persons," who is identified as Blaze Mobile, Inc.

13. On information and belief, Blaze Mobile Technologies controls and operates the website at blazemobiletech.com.

14. A true and correct copy of a PDF printout of a page from the blazemobiletech.com website (blazemobiletech.com/blaze-mobile-wallet/) as it appears in 2025 is attached as Exhibit F. That page contains a link to blazemobile.com/patents.asp (*see* Exhibit E, described above).

15. Defendant Michelle Fisher ("Ms. Fisher") is the sole named inventor on all of the Patents-in-Suit.

16. On information and belief, Ms. Fisher resides in the Northern District of California.

17. On information and belief, Ms. Fisher is the President, CEO, Secretary, and founder of Blaze Mobile Inc. and exercises sole and complete control over that entity.

18. On information and belief, Ms. Fisher is the CEO and founder of Blaze Mobile Technologies, is its sole employee, and exercises sole and complete control over that entity.

## IV. The Patents-in-Suit

19. The '664 patent is titled "Mobile Banking Transactions at a Server with

1  Authentication." The '664 patent is attached as Exhibit A.

2      20.    The '664 patent issued on March 19, 2019. At the time it issued, the '664 patent was assigned to Ms. Fisher. Ms. Fisher is identified on the '664 patent as residing "Oakland, CA" and "Berkeley, CA."

    21.    The '365 patent is titled "Blaze Mobile Banking Using a Non-Browser Based Application." The '365 patent is attached as Exhibit B.

    22.    The '365 patent issued on October 10, 2023. At the time it issued, the '365 patent was assigned to Ms. Fisher. Ms. Fisher is identified on the '365 patent as residing in "Berkeley, CA."

    23.    The '649 patent is titled "Method and System for Mobile Banking Using a Server." The '649 patent is attached as Exhibit C.

    24.    The '649 patent issued on December 19, 2023. At the time it issued, the '649 patent was assigned to Ms. Fisher. Ms. Fisher is identified on the '649 patent as residing in "Marina Del Rey, CA" and "Berkeley, CA."

    25.    The correspondence address currently registered with the Patent Office for each of the Patents-in-Suit is 2930 Domingo Avenue, Suite 123, Berkeley, California.

    26.    The address 2930 Domingo Avenue, 123, Berkeley, California was provided to the Patent Office in 2024 for each of the Patents-in-Suit when Ms. Fisher submitted an assignment dated March 2, 2024, that conveyed each of the Patents-in-Suit from Blaze Mobile Inc. to Blaze Mobile Technologies. A copy of the assignment is attached as Exhibit G.

    27.    The patent application that led to the '664 patent, Application No. 14/219,223, was filed on March 19, 2014, by Ms. Fisher, who identified herself as a resident of Oakland, California. This patent application was prosecuted by Ms. Fisher from the address 2930 Domingo Avenue, Suite 123, Berkeley, California, from March 19, 2014, until it issued as the '664 patent on March 19, 2019.

    28.    The patent application that led to the '649 patent, Application No. 14/691,537, was filed on April 20, 2015, by Ms. Fisher, who identified herself as a resident of Marina Del Rey, California. This patent application was prosecuted by Ms. Fisher from the address 2930 Domingo

1   Avenue, Suite 123, Berkeley, California, from April 20, 2015, until it issued as the '664 patent on December 19, 2023.

29. The patent application that led to the '365 patent, Application No. 18/205,385, was filed on June 2, 2023, by Ms. Fisher, who identified herself as a resident of Berkeley, California. This patent application was prosecuted by Ms. Fisher from the address 2930 Domingo Avenue, Suite 123, Berkeley, California, from June 2, 2023, until it issued as the '365 patent on October 10, 2023.

**V.    Jurisdiction And Venue**

30. This action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 2201, 2202, 1331, and 1338(a).

31. An actual and justiciable controversy exists between Schwab and the Defendants as to the alleged infringement of the claims of the Patents-in-Suit.

32. This Court has personal jurisdiction over Blaze Mobile Inc.

33. On information and belief, Blaze Mobile Inc. is based in this District and has been since it was first incorporated in 2005. On information and belief, all or most of the work and business that Blaze Mobile Inc. conducted related to the alleged inventions claimed in the Patents-in-Suit was conducted in or from this District. On information and belief, Blaze Mobile Inc. was doing business from this District when the alleged inventions claimed in the Patents-in-Suit were made, when the applications that led to the Patents-in-Suit were filed, throughout the time that those applications were prosecuted, and when the Patents-in-Suit issued.

34. This Court has personal jurisdiction over Ms. Fisher.

35. On information and belief, Ms. Fisher is resident in this District, operates Blaze Mobile Inc. and Blaze Mobile Technologies from this District, and exercises sole control over Blaze Mobile Inc. and Blaze Mobile Technologies from this District.

36. On information and belief, Ms. Fisher's work related to the alleged inventions claimed in the Patents-in-Suit was done in or from this District. Ms. Fisher was resident in this District when the alleged inventions claimed in the Patents-in-Suit were made by her, and when

1  she filed the applications that led to the '664 and '365 patents.

2  37.  Ms. Fisher prosecuted the applications that led to the Patents-in-Suit from an address in this District (2930 Domingo Avenue, Suite 123, Berkeley, California).

4  38.  Ms. Fisher is also the sole named inventor of more than 50 additional patents that are listed on the webpage blazemobile.com/patents.asp (*see* Exhibit E), all of which are based on applications that were filed from and prosecuted from an address in this District (2930 Domingo Avenue, Suite 123, Berkeley, California).

8  39.  On information and belief, Blaze Mobile Inc. and Ms. Fisher have asserted infringement of at least eight patents that name Ms. Fisher as the sole inventor by sending a letter from this District to Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung"). That letter is described in the complaint filed by Samsung against Blaze Mobile Inc. in this District in 2021, *Samsung Electronics Co., Ltd., et al. v. Blaze Mobile, Inc., et al.*, Case No. 5-21-cv-02989-EJD (N.D. Cal.) ("Samsung Case"), Dkt. 1, as well as in the answer filed by Blaze Mobile Inc. and Ms. Fisher, Dkt. 30.

15  40.  Blaze Mobile Inc. and Ms. Fisher have asserted patent infringement claims against Samsung in this District. *Samsung Electronics Co., Ltd., et al. v. Blaze Mobile, Inc., et al.*, Case No. 5-21-cv-02989-EJD (N.D. Cal.), Dkt. 30.

18  41.  In the Samsung Case, Blaze Mobile Inc. and Ms. Fisher told the Court that "[m]ost of the actions that gave rise to this declaratory judgment action occurred in the Oakland Division" and that "[m]ost of the potential witnesses reside within in [*sic*] the Oakland Division." *Samsung Electronics Co., Ltd., et al. v. Blaze Mobile, Inc., et al.*, Case No. 5-21-cv-02989-EJD (N.D. Cal.), Dkt. 26 at 2:9-12.

23  42.  This Court has personal jurisdiction over Blaze Mobile Technologies.

24  43.  On information and belief, Blaze Mobile Technologies' address in Texas is a "virtual" address that is operated by Alliance Virtual Offices, and Blaze Mobile Technologies is not operated from that address. Rather, Blaze Mobile Technologies is a subsidiary of Blaze Mobile Inc. that is operated by Ms. Fisher from this District, including from 2930 Domingo Avenue, Suite 123, Berkeley, California.

44. Blaze Mobile Technologies is the assignee of the Patents-in-Suit as well as at least four other patents naming Ms. Fisher as the sole inventor, all of which were assigned from Blaze Mobile Inc. to Blaze Mobile Technologies in 2024 (*See* Exhibit G). All seven of these patents are registered with the Patent Office with the correspondence address 2930 Domingo Avenue, Suite 123, Berkeley, California. That address in Berkeley is the address that Blaze Mobile Technologies uses to conduct its business with the Patent Office and is the same address that Ms. Fisher has used to conduct her business with the Patent Office for decades.

45. On information and belief, Blaze Mobile Technologies conducts business using the logo shown below, which is the same logo that Blaze Mobile Inc. has used to conduct business in this District since 2013:



46. On information and belief, Blaze Mobile Technologies is an alter ego of Ms. Fisher and/or Blaze Mobile Inc. that was formed as a conduit for asserting patent infringement claims in the Eastern District of Texas and in an attempt to avoid litigation in this District.

47. Blaze Mobile Technologies was formed in January 2024, approximately seven months after a judge in this District held that three patents assigned to Blaze Mobile Inc. (and naming Ms. Fisher as the sole inventor) were unpatentable under 35 U.S.C. § 101. *Samsung Electronics Co., Ltd., et al. v. Blaze Mobile, Inc., et al.*, Case No. 5-21-cv-02989-EJD (N.D. Cal.), Dkt. No. 93 (May 16, 2023 Order granting Samsung's motion for judgment of unpatentability as to U.S. Patent Nos. 9,378,493, 9,652,771, and 10,565,575).

48. As alleged above, Blaze Mobile Technologies has no managers and, on information and belief, has only one employee—Ms. Fisher.

49. Blaze Mobile Technologies was given a "virtual" address in the Eastern District of Texas (as described above, the address is operated by Alliance Virtual Offices).

50. The Eastern District of Texas has been known for decades as being a favorable venue

for patent infringement lawsuits, in part because it has "plaintiff-friendly juries." *See* "So Small a Town, So Many Patent Suits" (New York Times, September 24, 2006).[1] According to a Bloomberg Law article dated March 27, 2024, the Eastern District of Texas "drew 630 new patent suits in 2023—roughly one out of every five filed nationwide" and more than "all other judicial districts in the country."[2]

51. As described in this complaint, a large majority of the events giving rise to Schwab's claims occurred in this District. It would be inequitable to permit the formation of Blaze Mobile Technologies in 2024 to justify litigating claims related to the Patents-In-Suit in the Eastern District of Texas when almost all the events that give rise to those claims occurred in this District, and Blaze Mobile Inc. and Ms. Fisher are currently litigating patent claims in this District.

52. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 because Defendants are subject to personal jurisdiction in this District, and because of the circumstances described in this complaint, including, for example, because Blaze Mobile Inc. has its principal place of business in this District, Ms. Fisher resides in and conducts business in this District, and Blaze Mobile Technologies is a subsidiary of Blaze Mobile Inc. that is controlled and operated from this District.

53. Additionally, Blaze Mobile Inc. and Ms. Fisher admitted that this District is a proper venue for litigating their patents in the Samsung Case.

**VI.  The Parties' Dispute Concerning The Asserted Patents**

54. As described above, Ms. Fisher and Blaze Mobile Inc. created Blaze Mobile Technologies and gave it a "virtual" address in the Eastern District of Texas, a district widely seen as a favorable venue for patent infringement lawsuits. They did so in January 2024, approximately seven months after a judge in this District invalidated three patents that name Ms. Fisher as the sole inventor and that are assigned to Blaze Mobile Inc. Two months later, Ms. Fisher signed an assignment transferring seven patents, including the Patents-in-suit, from Blaze Mobile Inc. to Blaze Mobile Technologies. (Exhibit G.)

---

[1] https://www.nytimes.com/2006/09/24/business/24ward.html

[2] https://news.bloomberglaw.com/ip-law/top-patent-venues-are-two-steps-ahead-of-judge-shopping-guidance

55. On October 7, 2024, Ms. Fisher sent Schwab a letter informing them of "Charles Schwab's Use of Blaze Mobile Technologies Intellectual Property." A copy of this letter ("October 7 letter") is attached as Exhibit H.

56. The October 7 letter states that it was sent from Blaze Mobile Technologies' address in the Eastern District of Texas.

57. The October 7 letter states that "Charles Schwab's mobile banking application and its overall design and implementation appear to leverage Blaze Mobile Technologies' patented technology." The letter identifies three patents—the Patents-In-Suit—as "relevant to Charles Schwab's mobile banking application."

58. The October 7 letter asserts that "Blaze Mobile Technologies' patented mobile application technology provides substantial benefits, including through cost savings," and states that "Given the size of Charles Schwab, the cost savings it realizes from its mobile banking application is estimated to be in excess of $100M per year (and likely substantially more)."

59. Greenberg Traurig, LLP ("GT") was retained by Schwab. On October 28, 2024, attorney Nicholas Brown, who is located in GT's San Francisco office, began communicating with Ms. Fisher regarding her letter to Schwab.

60. During the communication, Ms. Fisher made a statement to Mr. Brown that suggested she was represented by counsel. Mr. Brown told Ms. Fisher he could not continue to communicate directly with her without her counsel's consent. Soon thereafter, Mr. Brown received written consent to communicate directly with Ms. Fisher from Mr. Edward Reilly of Themis Legal Capital. Themis Legal Capital's website (themislc.com) states: "Themis Legal Capital is a Litigation Finance Company that provides capital to corporations and law firms based upon the merits and value of their commercial claims and, in return, receives an interest in the recovery."

61. On December 1, 2024, Ms. Fisher informed GT that she needed to postpone a call that had been scheduled for December 3, 2024. At the same time, Ms. Fisher suggested that she wanted to have a Non-Disclosure Agreement in place before having any substantive discussions about patent licensing.

62. On December 9, 2024, Ms. Fisher sent a proposed agreement to GT that she

described as a "mutual NDA." However, the agreement that Ms. Fisher proposed was not just a non-disclosure agreement. The proposed agreement was also a tolling agreement, providing that "any applicable statute of limitations shall be tolled during active negotiations." It required agreement that while the parties were "actively negotiating … neither will commence litigation." And it further required that Schwab agree that "nothing Patent Owner discloses in these negotiations will confer declaratory jurisdiction."

63. On December 21, 2024, Ms. Fisher sent additional terms to GT. These additional terms had nothing to do with maintaining confidentiality. Instead, the additional terms required Schwab to agree not just that it would not "commence litigation" while the parties were "actively negotiating," but also that it would not commence any "proceedings before the United States Patent Office," such as a request for reexamination or a petition for *inter partes* review. At the time, the Samsung Case described above was stayed pending reexamination requests that Samsung had filed against the eight patents involved in the case. And Samsung had previously filed petitions for *inter partes* review against the same eight patents.

64. As of this point, the circumstances described in this complaint gave Schwab a reasonable apprehension that it would be sued by Blaze Mobile Technologies for infringement of the Patents-In-Suit.

65. Nonetheless, in an effort to avoid the patent infringement litigation that Defendants' actions threatened, GT sent proposed revisions to the proposed agreement on January 16, 2025. GT told Ms. Fisher that GT "accepted your changes to the clause about the tolling agreement" and "[w]e agree that the idea is to try to reach a resolution without litigation of any sort, including IPRs at the Patent Office."

66. Also on January 16, 2025, GT asked that a clause in the proposed agreement be modified to remove the implication that anything Blaze Mobile Technologies marked as confidential would not be subject to discovery in subsequent litigation. And GT told Ms. Fisher that if there was to be an agreement, the agreement would need to be with GT as outside counsel for Schwab, and not with Schwab itself.

67. Later in January, GT signed the agreement—which was titled "Mutual

Nondisclosure Agreement"— on its own behalf (not on behalf of Schwab).

68. After the Mutual Nondisclosure Agreement was signed, Ms. Fisher agreed to have a substantive discussion about resolving the threatened patent infringement suit through a license instead of litigation. Schwab, through GT, entered into and conducted the negotiations in good faith with the goal of reaching a resolution without litigation. However, the negotiations did not result in agreement.

69. On February 28, 2025, at approximately 1pm PT, GT gave written notice to Ms. Fisher that GT was terminating the Mutual Nondisclosure Agreement and the "active negotiations" referred to in that agreement.

70. All of the communications between Ms. Fisher and GT described above were received or sent by GT attorney Nicholas Brown from his office in San Francisco or from a mobile device while he was in the Bay Area.

71. Schwab does not directly or indirectly infringe, and has not directly or indirectly infringed, any claim of the '664 patent when those claims are properly construed. For example, Schwab does not perform a method, or make, use, sell, offer to sell, or import a system or remote management server "for processing a mobile banking transaction" (all claims) that "after the mobile banking transaction has been processed, sends a digital artifact to the non-browser based application for display within a non-browser based application generated screen" (independent claims 2, 3), or performs the step of "after the mobile banking transaction has been processed, sending, from the remote management server, a digital artifact to the non-browser based application for display within a non-browser based application generated screen" (independent claim 1). Likewise, Schwab does not induce or contribute to a third party performing a method, or making, using, selling, offering to sell, or importing, a system or remote management server "for processing a mobile banking transaction" (all claims) that "after the mobile banking transaction has been processed, sends a digital artifact to the non-browser based application for display within a non-browser based application generated screen" (independent claims 2, 3), or performs the step of "after the mobile banking transaction has been processed, sending, from the remote management server, a digital artifact to the non-browser based application for display within a non-browser

based application generated screen" (independent claim 1).

72.     Schwab does not directly or indirectly infringe, and has not directly or indirectly infringed, any claim of the '365 patent when those claims are properly construed. For example, Schwab does not make, use, sell, offer to sell, or import "[a] mobile device for processing a mobile banking transaction" that "receive[s] a digital artifact from the remote management server at the non-browser based application" (independent claim 16), and because Schwab does not perform a method "for processing a mobile banking transaction using a mobile device" that includes the step of "receiving a digital artifact from the remote management server at the non-browser based application" (independent claim 1). Likewise, Schwab does not induce or contribute to a third party making, using, selling, offering to sell, or importing "[a] mobile device for processing a mobile banking transaction" that "receive[s] a digital artifact from the remote management server at the non-browser based application" (independent claim 16), or to a third party performing a method "for processing a mobile banking transaction using a mobile device" that includes the step of "receiving a digital artifact from the remote management server at the non-browser based application" (independent claim 1).

73.     Schwab does not directly or indirectly infringe, and has not directly or indirectly infringed, any claim of the '649 patent when those claims are properly construed. For example, Schwab does perform a method, or make, use, sell, offer to sell, or import a system or non-transitory computer readable medium, "for conducting a mobile banking transaction using a server" (all claims) that "sends a digital artifact to the non-browser based application" (independent claim 12), or which performs the step of "sending, from the server, a digital artifact to the non-browser based application" (independent claims 1, 23). Likewise, Schwab does not induce or contribute to a third party performing a method, or making, using, selling, offering to sell, or importing a system or non-transitory computer readable medium, "for conducting a mobile banking transaction using a server" (all claims) that "sends a digital artifact to the non-browser based application" (independent claim 12), or which performs the step of "sending, from the server, a digital artifact to the non-browser based application" (independent claims 1, 23).

74.     Accordingly, as described in this complaint, an actual and justiciable controversy

exists between Schwab and Defendants as to whether Schwab is liable for infringement of the Patents-In-Suit.

## VII.   COUNT ONE

### Declaratory Judgment Of Non-Infringement Of The '664 Patent

75. Schwab restates and realleges each of the assertions set forth in the paragraphs above.

76. Schwab has not infringed and does not infringe any valid claim of the '664 patent directly or indirectly, either literally or under the doctrine of equivalents, for at least the reasons specifically set forth in the paragraphs above.

77. There is an actual controversy, within the meaning of 28 U.S.C. § 2201 and § 2202, between Schwab and the Defendants concerning the non-infringement of the '664 patent.

78. Schwab is therefore entitled to a declaratory judgment that it has not infringed the '664 patent, directly or indirectly, either literally or under the doctrine of equivalents.

## VIII.   COUNT TWO

### Declaratory Judgment Of Non-Infringement Of The '365 Patent

79. Schwab restates and realleges each of the assertions set forth in the paragraphs above.

80. Schwab has not infringed and does not infringe any valid claim of the '365 patent directly or indirectly, either literally or under the doctrine of equivalents, for at least the reasons specifically set forth in the paragraphs above.

81. There is an actual controversy, within the meaning of 28 U.S.C. § 2201 and § 2202, between Schwab and the Defendants concerning the non-infringement of the '365 patent.

82. Schwab is therefore entitled to a declaratory judgment that it has not infringed the '365 patent, directly or indirectly, either literally or under the doctrine of equivalents.

## IX.   COUNT THREE

### Declaratory Judgment Of Non-Infringement Of The '649 Patent

83. Schwab restates and realleges each of the assertions set forth in the paragraphs above.

84. Schwab has not infringed and does not infringe any valid claim of the '649 patent directly or indirectly, either literally or under the doctrine of equivalents, for at least the reasons specifically set forth in the paragraphs above.

85. There is an actual controversy, within the meaning of 28 U.S.C. § 2201 and § 2202, between Schwab and the Defendants concerning the non-infringement of the '649 patent.

86. Schwab is therefore entitled to a declaratory judgment that it has not infringed the '649 patent, directly or indirectly, either literally or under the doctrine of equivalents.

**PRAYER FOR RELIEF**

WHEREFORE, Schwab respectfully requests that the Court enter judgment in its favor against Defendants, granting the following relief:

a) A declaration that Schwab does not infringe the '664 patent, directly or indirectly, either literally or under the doctrine of equivalents;

b) A declaration that Schwab does not infringe the '365 patent, directly or indirectly, either literally or under the doctrine of equivalents;

c) A declaration that Schwab does not infringe the '649 patent, directly or indirectly, either literally or under the doctrine of equivalents;

d) A judgment that this is an exceptional case and an award to Schwab of its costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

e) An award of costs, and expenses as allowed by law;

f) Such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Schwab demands jury trial on all issues and claims so triable.

DATED: February 28, 2025

**GREENBERG TRAURIG, LLP**

By: /s/ Nicholas A. Brown

Nicholas A. Brown (SBN 198210)
brownn@gtlaw.com
GREENBERG TRAURIG, LLP
101 2nd Street, Suite 2200
San Francisco, CA 94105
Telephone: (415) 655-1271
Facsimile: (415) 520-5609

Scott J. Bornstein (*pro hac vice forthcoming*)
scott.bornstein@gtlaw.com
Joshua L. Raskin (*pro hac vice forthcoming*)
joshua.raskin@gtlaw.com
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

Counsel for Plaintiffs Charles Schwab & Co., Inc., Charles Schwab Bank, SSB, and The Charles Schwab Corporation